# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SAHI COSMETICS L.L.C., | |
| *Plaintiff,* | CASE NO.: |
| v. | |
| REA.DEEMING BEAUTY, INC. D/B/A BEAUTYBLENDER | JURY TRIAL DEMANDED |
| *Defendant.* | |

## COMPLAINT AND JURY DEMAND

Plaintiff Sahi Cosmetics L.L.C. ("Plaintiff" or "Sahi"), for its Complaint against Defendant Rea.deeming Beauty, Inc. DBA BeautyBlender alleged as follows:

### I.       NATURE OF ACTION

1.       This is an action to redress violations of Michigan Act 242, P.A. 1969 for state trade dress infringement and false designation of origin (Act 242, P.A. 1969 § 429.42 §§ 12), violation of the Michigan Consumer Protection Act (Act 331, P.A. 1976 2§ 445.903 §§ 3 *et seq.*) and violation of the federal Lanham Act for trade dress infringement and false designation of origincommon law trademark rights under Lanham Act, 15 U.S.C. § 1125(a) and 15 U.S.C. § 1127, and common law unfair competition rights, as the result of Defendant's willful and unauthorized use of Sahi's protected, non-functional, and inherently distinctive trade dress. Sahi seeks preliminary and permanent injunctive relief restraining Defendant's infringement and unauthorized use, monetary remedies, reasonable attorneys' fees, and other relief as the Court deems just and necessary.

1

## II.     PARTIES

2.     Sahi is a Michigan limited liability company with its principal places of business located at 9079 Countrywood Dr., Plymouth, MI 48170.

3.     Rea.deeming Beauty, Inc. DBA BeautyBlender is a Pennsylvania corporation with its principal place of business located at 3864 Courtney Street #190, Bethlehem, PA 18017. Rea.deeming Beauty, Inc. DBA BeautyBlender also has a corporate office in California located at 21200 Erwin Street, Woodland Hills, CA 91367.

## III.     JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 & 1338(a), as Sahi's Complaint includes claims arising under the Lanham Act, 15 U.S.C. § 1125(a).  This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because: 1) the Plaintiff is a citizen of Michigan and the Defendant is a citizen of Pennsylvania and California; and 2) on information and belief, the the amount in controversy will be greater than $75,000, exclusive of interest and costs.

5.     This Court has pendant, ancillary, and/or supplemental jurisdiction over the Michigan State claim for violation of the Michigan Consumer Protection Act  Act 331, P.A. 1976 through 28 U.S.C. § 1367 and violation of the Michigan State Trademark Act 242, P.A. 1969 § 429.42 §§ 12.

6.     Personal jurisdiction over Defendant is proper in this judicial district because, upon information and belief, Defendant does business in this judicial district and elsewhere in Michigan, through, at least, its website www.beautyblender.com, websites of distributers and retailers such as www.sephora.com, and brick and mortar distributors and retailers, such as Sephora®, which has multiple locations in the Eastern District of Michigan.  Defendant

advertised, promoted, and sold cosmetics with Sahi's protected, non-functional, and inherently distinctive trade dress (the "Infringing Products") to consumers throughout the United States, including specifically, within the Eastern District of Michigan. These and other infringing and unlawful actions by the Defendant are already causing confusion in the marketplace. Therefore, this Court has specific personal jurisdiction over the Defendant.

7.     Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b) because events giving rise to the claims alleged herein have occurred, are occuring, and will continue to occur in this judicial district, and the harm sustained by Plaintiff has been, is being, and will continue to be incurred in this judicial district.

## IV.     FACTUAL BACKGROUND

8.     Sahi is a fast growing start-up luxury beauty brand that sells cosmetics and related lifestyle products. Since its founding in 2016, Sahi has devoted extensive skill, effort, ingenuity, capital and resources to create innovative products, packaging, and a distinctive trade dress to create and popularize Sahi's unique brand identity.

9.     Sahi's dedication to cater to underserved consumers has been featured in *The Detroit News* (see Exhibit A), *BeautyMatter* (see Exhibit B), *Cosmeticsdesign.com* (see Exhibit C), *Xconomy.com* (see Exhibit D), *Crain's Detroit Business* at least four times (see Exhibit E, Exhibit F, Exhibit G, and Exhibit H), *Twins Cities Business* (see Exhibit I), and *Concentrate* (see Exhibit J).

10.     Sahi's founder, Sheleen Sahi, graduated from University of Michigan with B.S. in Biology and Philosophy in 2012, and an MBA in 2016. Sheleen Sahi worked for Ford Motor Company as a material science engineer and business analyst from 2012 through 2015.  Sheleen Sahi founded Sahi Cosmetics L.L.C. December 2015.  In the winter of 2016 - 2017, Sahi was a

part of the Desai Accelertor, a joint venture between the Zell Lurie Institute at the University of

Michigan's Ross School of Business and the University of Michigan's College of Engineering.

Sahi won the Michigan Business Challenge on February 17, 2017, (see Exhibit C and Exhibit J)

and received $27,000.00.

11.     Sahi also won a seed investment of $100,000 from the Zell Lurie Founders Fund

in August 2017 (see Exhibit E).

12.     Sahi entered into the Rise of the Rest Competition, funded by AOL's founder

Steve Case and other leading investors, such as Detroit businessman Dan Gilbert, and won the

first place prize of an additional $100,000 on October 11, 2017, (see Exhibit G).

13.     Sahi participated in the Target Takeoff Accelerator Program around January

2019, which linked her to Macys (see Exhibit B). Macys then featured Sahi in two of their Los

Angeles stores on a one-month contract (see Exhibit K).

14.     In 2019, Crain's Detroit Business featured Sahi in their "20 in their 20s" column

(Exhibit H), specifically drawing attention to Sahi's passion for, commitment to, and investment

in providing underrepresented communities with a wider array of options for cosmetics products.

15.     In August 2019, Sahi was recognized by the Michigan Minority Supplier

Development Council (MMSDC) as one of their Motor City Honors 2019 "Twenty to Watch,"

(see Exhibit L) which highlights emerging industry and community leaders that have "exhibited

the power to lead and cultivate change."  These individuals participate in community service,

mentorship, and inspire others through their passion and skills.

**Plaintiff's Inherently Distinctive Trade Dress**

16.     At least as early as November 2017, Sahi introduced the elegant and striking Sahi

Trade Dress with its first makeup primer serum product, Sahi Cosmetics® Mystic primer serum.

4

Among other elements, the distinctive SAHI Trade Dress comprises a makeup primer serum with an iridescent pearl multicolor hue with a blue to pink shift when pivoted in the light ("SAHI Trade Dress").  When the hue shifts from blue to pink, green and purple hues can be seen as the iridescent color. Images of the SAHI Trade Dress along with its packaging appear below:

 

 

17.    The SAHI Trade Dress is not functional and does not improve the function of the primer serum. It is merely to dress the primer serum in an ethereal way to make it distinguishable in a crowded market. The SAHI Trade Dress cannot be seen when the primer serum is rubbed or patted into the skin.  Wearers of Sahi's primer serum do not appear to have a color shifting rainbow on their skin after application of Plaintiff's primer serum to their skin. Sahi has

advertised, promoted, and sold its Mystic primer serum throughout the United States. Further, Sahi's primer serum was sold as one of the included items in the Fall 2018 *FabFitFun*® specialty subscription box (see Exhibit M). *FabFitFun*® is a quarterly subscription box that is distributed to *FabFitFun*® subscribers all across the U.S.

18.     No makeup primers or primer serums included SAHI's Trade Dress until SAHI launched its Mystic primer serum. Sahi was the first on the market with a makeup primer or primer serum dressed in this manner.

19.     On September 26, 2018, *FabFitFun*® marketed the Sahi Cosmetics® Mystic primer serum in its live Facebook® video for Fall Beauty Glam. The hosts praised Sahi's Mystic primer serum for giving "the perfect glow-from-within look before you apply your makeup," which can be found at www.facebook.com/FabFitFun/videos/2246202985611001 (starting at about 12:40). The live video from *FabFitFun*® included a demonstration of applying the product on a women's hand in both a dollop form and a smeared swatch. This demonstration created an easily recognizable image of the trade dress as one would see it applied to the skin as shown below:




6

In the studio lighting, the color of Sahis primer serum appears blue when first dotted on the skin, shifts to pink when smeared, and the iridescent color disappears when rubbed into the skin.  The host of the The live video from *FabFitFun*® praised Sahi's primer serum and said, in part, "...this is a beautiful product...and what is great about it is they are makeup products that have skincare benefits...you can actually use the BeautyBlender® [Defendant's popular product] to apply a primer too...".

### Defendant's Trade Dress For Its Opal Essence® Primer

20.     Defendant's Opal Essence® Primer ("OPAL") is a makeup primer serum with a color iridescence that shifts from blue to pink. Green and purple colors can be seen as the iridescent color shifts from blue to pink. OPAL was first used in commerce on March 04, 2019 as per OPAL's trademark registration (reg. no. 5776467), which is approximately one year and five months after Sahi's Mystic primer serum was launched. OPAL is dressed with the SAHI Trade Dress. Below are images of the OPAL product packaging as well as a dollop and a swatch of the primer serum itself:






21.    The extent of Defendant's imitation of the Sahi Trade Dress becomes even more apparent when OPAL is compared to Sahi's Mystic primer serum. Side-by-side images of both OPAL (right) and Sahi's Mystic Primer incorporating SAHI's Trade Dress (left) are shown below:

8

**Sahi Mystic
Primer Serum**

**Rae.deeming Beauty, Inc. Opal Essence
Primer Serum**













22.     As seen above, Defendant's primer serum imitates SAHI's Trade Dress of an iridescent pearl multicolor hue with a blue to pink shift.  As shown above, Defendant's has even made its packaging for their primer serum mimic SAHI's Trade Dress to emulate the color of Defendant's product inside Defendant's packaging. Below is a chart comparing the advertising description for Sahi's primer serum and Defendant's OPAL.

| SAME DESCRIPTION | | |
|---|---|---|
| | OURS | THEIRS |
| | MYSTIC | MAGIC |
| FUNCTION | BRIGHTEN, HYDRATE, SMOOTH LINES, BETTER SKIN | BRIGHTEN, HYDRATE, SMOOTH LINES, BETTER SKIN |
| TEXTURE | MILKY WHITE-BLUE HUE | MILKY WHITE-BLUE HUE |
| EFFECT | DEWY GLOW | DEWY GLOW |
| MANUFACTURED | KOREA | KOREA |
| PRICE | $32 | $32 |

23.     Sahi's primer serum is named Mystic and Defendant advertised OPAL on, at least Instagram, as "[t]hese pearly dew-drops from heaven are in fact real and you can only find this *magic* in our OPAL ESSENCE primer!" (emphasis added).  An image of Defendant's Instagram advertisement is provided below.



**Likelihood of Confusion**

24.     As a result of Sahi's continuous and widespread use of the SAHI Trade Dress since 2017, Sahi owns valuable goodwill in the SAHI Trade Dress, which is inherently distinctive and non-functional, for its high-quality and inherently distinct makeup primer serum.

25.     Defendant's use of the Sahi Trade Dress is without authorization by Sahi.

26.     Defendant's unauthorized use of the SAHI Trade Dress in connection with its OPAL product is likely to cause confusion, or to cause mistake, or to deceive concerning the source of the parties' goods and/or services and/or whether Sahi has sponsored, endorsed or licensed Defendant's product (or vice versa) and/or whether there is any connection or affiliation between Defendant and Sahi.

27.     In response to an August 2020, TikTok® video posted by Sahi explaining her claim that Defendant had infringed the SAHI Trade Dress, Defendant's PR team emailed a statement to Sahi on August 20, 2020 attempting to refute Sahi's claim of infringement. On September 18, 2020, Alexis Tedesco, Vice President of Global Communications for Defendant reached out to Sahi, offering to connect Sahi with Defendant's person in charge of product development.  Sahi accepted the offer to connect with said person, and Defendant refused to make the connection.  Images of this email exchange are below in chronological order:

---------- Forwarded message ----------
From: Beautyblender PR <Public Relations@beautyblender.com>
Date: Thu, Aug 20, 2020 at 3:44 PM
Subject: TikTok Video Response
To: contact@sahicosmetics.com <contact@sahicosmetics.com>

Dear Shelly,

We were surprised and confused to see your video where you stated that Beautyblender purposely "copied" your product. As a brand that prides itself on innovation, we actively ensure to never infringe on any other brand, no matter their size. I'm sure you can understand the harm that would do to us as a brand and small company ourselves.

Assuming you have not tried our Opal Essence product before, nor attempted to reach out to us directly with your concern, below is a timeline of how our Opal Essence Primer was developed and released. Hopefully you understand the severity of attempting to defame a company without any fact-based knowledge to back up such a statement.

**Different Product Descriptions + Ingredients:**

As you can see from **the attached image** of both product descriptions, the formulas are described very differently, leave a different finish and contain different ingredients (we post our full ingredient list publicly, by the way)

**Opal Essence Development Timeline:**

March 2017- Beautyblender briefed the concept at Cosmoprof Bologna

June 2017 – March 2018: Beautyblender developed the formula (we have the initial email where we establish texture starting points with our manufacture should we need to provide further proof)

Nov 2017 – Started inquiry on TM for names

March 2018 – June 2018 – Entered into testing RIPT, Clinical Moisturization study, Consumer Study

July 2018 - Nov 2018 – Production, Filling & Assembly, Micro Testing, Release

October 2018 – released the launch to US based press outlets in NYC

Dec 2018 – Boat Shipment from Korea to PA warehouse

Mid Jan 2019 – Ship from PA warehouse

March 2019 – On Counter at Sephora

You also claim that we are a "big corporation". Perhaps you do not know that we are owned by Rea Ann Silva, a Latina makeup artist who personally funded this business from the cash she made while doing makeup and raising two children alone as a single mom. To this day she is still the sole owner of the brand and we have no financial backers or investors.

Your irresponsible TikTok video earned you almost 1MM views, 170k likes, 2,700+ comments and 7k+ shares – its seems you knowingly defamed us in an effort to self-promote and gain notoriety for a product that you also list as "new" on your website.

We would have hoped that if you were genuinely concerned that we stole your idea or product that you would have reach out to us directly so we could share with you the facts. As a female founder yourself, it is disappointing that instead of us all lifting each other up in this world we revert to hate and cancelled culture instead.

We ask that you immediately take down the defaming video from TikTok and any other channel you have posted it on. It not only violates our IP but it is a clear case of defamation. We urge you, now that you are armed with all of the facts, that you will once again appeal to your audience and correct the mistake you have made.

Best,

The Beautyblender Team

**From:** Customer Service <contact@sahicosmetics.com>
**Sent:** Saturday, September 05, 2020 6:58 PM
**To:** Beautyblender PR
**Subject:** Re: TikTok Video Response

Dear BeautyBlender Team:

My post depicts my horror, shock, surprise, and raw emotion over seeing a well-respected woman-owned brand stepping on my rights.  Nothing in my post is defamatory and I deny any and all allegations in your email. I was surprised that a woman-owned business, particularly a minority woman-owned business, would infringe on another brand, particularly another minority woman-owned brand.  It is no secret BeautyBlender has had its share of rights trampled on by other brands, and to see it has decided to join them made my head spin.  This is a reasonable reaction when something shocks the conscience.

You mentioned in your email that you would send me "the initial email where we establish texture starting points with our manufacture" if I would like it. Would you send that email to me and the name of your lab/manufacturer in Korea?

Regards,
Shelly

**From:** Alexis Tedesco <Alexis.Tedesco@beautyblender.com>
**Date:** September 18, 2020 at 7:21:10 PM EDT
**To:** contact@sahicosmetics.com
**Subject:** RE: TikTok Video Response

Dear Shelly,

My name is Alexis Tedesco, I am Vice President of Global Communications for Beautyblender and have worked with Rea Ann and the brand since 2007.

We reached out to you in mid-August in the hopes of providing some clarity on the matter at hand (you accusing Beautyblender of stealing from you) and did not receive a response for several weeks while you continued to defame our brand on social media channels.

Like yourself, we were also horrified, shocked and surprised by the manner in which you chose to attack us, our team and our product.  We sent an email to outline our product development timeline, highlight how we explain our products and finishes differently and have different key ingredients.  We also wanted to point out that this product falls within a category not exclusive to either brand – many have launched even before your primer.

Once again, Beautyblender did not steal your product formulation, product idea or anything having to do with your product.

We would like to discuss this matter further with you and put you in touch with the person in charge of product development.  If interested, I am happy to facilitate that conversation and open up the lines of communication so you can get some more clarity on the matter and we can hopefully clear up this misunderstanding.

Please let me know if this is of interest and we can discuss live sometime early next week.

Best,

Alexis Tedesco

Alexis Tedesco

Vice President, Global Communications

Beautyblender

E: alexis.tedesco@beautyblender.com

**From:** Customer Service <contact@sahicosmetics.com>
**Date:** Monday, September 21, 2020 at 3:41 PM
**To:** Alexis Tedesco <Alexis.Tedesco@beautyblender.com>
**Subject:** Re: TikTok Video Response

Dear Mr. Tedesco,

Thank you for reaching back. It is nice to address my email to a specific person so I appreciate that. Nothing in my posts is defamatory. I would like to be connected with your person in charge of product development. We may be able to work out a few things through email. Would you connect me with that person and send me the email your team said you would provide if I asked, as well as the name of your lab in Korea?

Regards,
S

On Mon, Sep 28, 2020 at 2:49 PM Alexis Tedesco <Alexis.Tedesco@beautyblender.com> wrote:

Hi Shelly,

Unfortunately your repeated comments and videos about Beautyblender are attempting to damage our good reputation and we do not feel they are at all rooted in facts.

Since you prefer to have this dialog via email and you have repeatedly threatened legal action against Beautyblender publicly in your videos, I think at this point it is best if we just connect our lawyers directly to discuss the proprietary information you are looking for.

Can you send your attorney's contact info at your earliest convenience so I can connect them with our lawyer ASAP?

If you're interested, I am still open to facilitating a discussion with you instead of continuing to play this out in a public forum that seems unfairly one-sided.

Best,
Alexis

14

**From:** Customer Service <contact@sahicosmetics.com>
**Date:** Tuesday, September 29, 2020 at 6:58 PM
**To:** Alexis Tedesco <Alexis.Tedesco@beautyblender.com>
**Subject:** Re: TikTok Video Response

Hi Alexis,

If you are implying defamation when you say my posts are damaging your business, nothing in my posts is defamatory.  I explicitly deny any and all allegations contained in your email.

When and where did I threaten legal action?  Take a second look and let me know where you think that threat was made.

I am seeing a pattern from you and your team of not following through with commitments.  Your team offered to send me a certain email and you offered to connect me with a certain person at your company.  I accepted both.  Your team has not provided me with that email and you have not connected me with that person.  Please send me that email and connect me with that person.  If you have withdrawn your offer, even after I accepted, let me know.  I will stop expecting to receive what you offered.

Despite the lack of follow through thus far, I am willing to hear you out.  What would you like to discuss with me?

Regards,
S

On Wed, Sep 30, 2020 at 2:08 PM Alexis Tedesco <Alexis.Tedesco@beautyblender.com> wrote:

Hi Shelly,

You continue to publicly accuse Beautyblender of stealing – which we emphatically did not do.

For clarity, I highlighted instances below where I indicated I could facilitate a *discussion* and there is backup that could be provided *if needed*.  My apologies if this was misunderstood, but I did not offer to provide you personally with proprietary information.  I hope you can understand that sending you copies of this information would disclose confidential contact information of vendors, partners and employees of Beautyblender.  None of these parties want their information publicly shared and they are contractually protected against that happening.  This is why I continue to offer up a call / live discussion.

But since you have consistently stated that you plan to defend and fight your claim legally in a number of your videos, our lawyers can absolutely determine what information needs to be exchanged while ensuring it remains confidential.

I am still offering to facilitate a dialog with you to help clear up these misconceptions – assuming that is your ultimate priority?

Please send over the questions you want answered so I can have our head product development prepared for the discussion. And let me know when you have time this week for the call and I can coordinate?

Best,
Alexis

**From:** Customer Service <contact@sahicosmetics.com>
**Date:** Thursday, October 1, 2020 at 1:08 PM
**To:** Alexis Tedesco <Alexis.Tedesco@beautyblender.com>
**Subject:** Re: TikTok Video Response

Alexis,

I have not threatened legal action.  I asked you to specifically point out where I did that, and you didn't.  Please do not twist my words.  I explicitly deny any allegations in any of your emails to me.

I did not misunderstand Beauty Blender's offer to send me the email or anything else in my communications with Beauty Blender.  The communications were clear and offers were made.  Beauty Blender is backpedaling.

My ultimate goal is to protect my rights and my business.  With you twisting my words and Beauty Blender backpedaling on offers, I do not trust how it will behave in a phone call.  I do not believe Beauty Blender will operate with good intent during a call.

I was hopeful that we could resolve this matter without including attorneys, but I do not feel safe communicating with you or Beauty Blender directly.  Please provide me with your attorney's contact information and I will have my team connect with your attorney.  They can take this matter from here.

Regards,
S

> **From:** Alexis Tedesco <Alexis.Tedesco@beautyblender.com>
> **Date:** October 1, 2020 at 1:32:56 PM EDT
> **To:** Customer Service <contact@sahicosmetics.com>
> **Subject:** Re: TikTok Video Response

> Not a problem at all.  Please see below.

28.      Defendant's continued unauthorized use of the Sahi Trade Dress is causing irreparable harm, and will continue to, cause irreparable harm to the goodwill of the SAHI Trade Dress, the ability of that trade dress to serve as a source indicator for the goods and services offered under the SAHI Trade Dress, and Plaintiff's ability to control the use of the SAHI Trade Dress so that it may function as a source identifier.

29.      The launch of the Infringing Products has unjustly increased the profits of Defendant's business to the detriment of Sahi and at no cost to the Defendant.

**V.      FIRST CAUSE OF ACTION: STATE TRADE DRESS INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN (Act 242, P.A. 1969 § 429.42 §§12)**

30.      Sahi restates and realleges the allegations in paragraphs 1 through 29.

16

31. The SAHI Trade Dress is inherently distinctive and not functional and registered on December 11, 2020, by the State of Michigan Department of Licensing and Regulatory Affairs Trademark Registration No. 802571178 (see Exhibit N).

32. In Michigan, mark registration is governed by Act 242, P.A. 1969, as amended. The Michigan Act is modeled after the federal law governing trademarks (The Lanham Act). Michigan Act 242, P.A. 1969 § 429.42 §§ 12 states in pertinent part:

> (a) Use, without the consent of the registrant, any reproduction, counterfeit, copy or colorable imitation of a mark registered under this act in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services; or
> (b) Reproduce, counterfeit, copy or colorably imitate any such registered mark and apply such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used upon or in connection with the sale or other distribution in this state of such goods or services; is liable to a civil action by the owner of the registered mark for any or all of the remedies provided in section 13, except that under subdivision (b) of this section the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that the mark is intended to be used to cause confusion or mistake or to deceive.

33. Defendant's actions in violation of § 429.42 §§ 12 have been willful and continue to be willful. On information and belief, Defendant deliberately copied the SAHI Trade Dress in designing its new primer serum product and packaging. In addition, Defendant has been on actual notice of the SAHI Trade Dress since at least as early as November 9, 2017, when Sahi began selling the Sahi primer serum through the same trade channels that Defendant uses to sell their products.

34. Defendant's actions in violation of § 429.42 §§ 12 have caused, and will continue to cause, Sahi to sustain damage, loss and injury, in an amount that cannot be fully measured or compensated in economic terms, and unjustly enrich Defendant at Sahi's expense. The actions of Defendant have damaged and will continue to damage Sahi's goodwill and reputation.

35.    Defendant's actions in violation of § 429.42 §§ 12 have caused and will continue to cause Sahi to sustain irreparable damage, loss and injury, for which Sahi has no adequate remedy at law, unless Defendant's acts are enjoined during the pendency of this action and thereafter.

## VI.    SECOND CAUSE OF ACTION: MICHIGAN UNFAIR COMPETITION
## (MICHIGAN CONSUMER PROTECTION ACT § 445.903 §§ 3 *et seq.*)

36.    Sahi restates and realleges the allegations of paragraphs 1 through 35.

37.    Defendant has engaged in unlawful business practices within the meaning of the Michigan Consumer Protection Act § 445.903 §§ 3 *et seq.* when engaging in the conduct alleged in this Complaint. This conduct includes, without limitation, Defendant's unauthorized use and/or infringement of the SAHI Trade Dress in connection with the marketing, advertising, promotion, offering for sale, and selling of the Infringing Products.

38.    Such conduct is "unlawful" within the meaning of the Michigan Consumer Protection Act § 445.903 §§ 3 *et seq.* because it causes a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services. Defendant's acts are likely to deceive the public in that they mislead members of the public into believing that Defendant's products come from Sahi and/or that there is an affiliation between Sahi and Defendant or between their respective products and/or that Sahi endorses or sponsors Defendant's products or that Defendant endorses or sponsors Sahi's products.

39.    Such conduct is "unfair" within the meaning of the Michigan Consumer Protection Act § 445.903 §§ 3 *et seq.* because it offends public policy and constitutes unfair competition.

40.    As a result of Defendant's unlawful, fraudulent, unfair and deceptive conduct,

Sahi has suffered and will continue to suffer economic losses for which it seeks restitution in an amount to be proven at trial and other harm to the goodwill represented by the SAHI Trade Dress in an amount that cannot be fully measured or adequately compensated in economic terms.

41.     Defendant's acts have caused and will continue to cause Sahi to sustain irreparable damage, loss and injury, for which Sahi has no adequate remedy at law, unless Defendant's acts are enjoined during the pendency of this action and thereafter.

## VII.   THIRD CAUSE OF ACTION: COMMON LAW TRADE DRESS INFRINGEMENT

42.     Sahi restates and realleges the allegations of paragraphs 1 through 41.

43.     Defendant's actions as alleged above constitute common law trade dress infringement. The SAHI Trade Dress is distinctive and non-functional and therefore constitutes valid trade dress that serves to communicate to consumers that the products on which it is used come from a single source.

44.     Defendant's use of the SAHI Trade Dress on the Infringing Products is likely to deceive the public by misleading members of the public into believing that Defendant's products come from Sahi (or that Sahi's products come from Defendant) and/or that there is an affiliation between Sahi and Defendant or between their respective products and/or that Sahi endorses or sponsors or has granted a license for Defendant's products or that Defendant endorses or sponsors or has granted a license to Sahi for its product.

45.     As a result of Defendant's infringement of the SAHI Trade Dress, Sahi has suffered and will continue to suffer economic losses in an amount to be proven at trial and

other harm to the goodwill represented by the SAHI Trade Dress in an amount that cannot be fully measured or adequately compensated in economic terms.

## VIII.   FOURTH CAUSE OF ACTION: COMMON LAW UNFAIR COMPETITION

46.     Sahi restates and realleges the allegations of paragraphs 1 through 45.

47.     Defendant's actions as alleged above constitute common law unfair competition because through their copying of the SAHI Trade Dress, Defendant is passing off its product as Sahi's product or as a product endorsed, sponsored, approved or licensed by Sahi to Defendant.

48.     On or about March 2017, Sahi was in negotiations with Sephora® to sell Sahi products.  On March 23, 2017, Sahi had a conference call with a representative of Sephora®.  Sephora® told Sahi that Sahi needs to grow more to be sold in Sephora®.  Images of the correspondence between Sahi and a Sephora® representative are reproduced below in chronological order.

**From:** Shelly Sahi [mailto:sheleen@sahicosmetics.com]
**Sent:** Friday, March 17, 2017 8:28 AM
**To:** Andrews, Averyl <Averyl.Andrews@sephora.com>

**Subject:** Fwd: FW: Introduction To SAHI

Hi Averyl,

I realize that my previous email address tends to get filtered as "shopping" in some inboxes. Here's the message below:

I'm so glad to meet you! I would love to speak with you next week. Sorry for the delay in response; I'll be in Tel Aviv, Israel next week for an Entrepreneurs Trek and I just received the itinerary.

Here are the free time slots converted to Pacific time:

Monday March 20th            8:00AM-9:00AM

Wednesday March 22nd        8:30AM-12:00PM

Thursday March 23rd          9:00AM-10:00PM

Friday March 24th .           6:00AM-9:00AM

Additionally, I'm free tomorrow 12PM onwards and Friday all day until 3PM.

Thanks and speak soon!

Shelly

**From:** Shelly Sahi [mailto:sheleen@sahicosmetics.com]
**Sent:** Monday, March 27, 2017 8:51 AM
**To:** Andrews, Averyl <Averyl.Andrews@sephora.com>
**Subject:** Re: FW: Introduction To SAHI

Hi Averyl,

Thank you for meeting with me last week! I really appreciate the advice and I will keep in touch as our brand continues to grow.

Thanks again!

21

On Fri, Mar 17, 2017 at 6:38 PM, Andrews, Averyl <Averyl.Andrews@sephora.com> wrote:

Hi Shelly,

I will send you an invite for Thursday at 9:30am next week. That's the only date that works for me next week. Apologies, I am back to back!

Looking forward to talking soon

Thanks,

Averyl

Averyl Andrews
SEPHORA
Senior Merchant, Color
tel. 415.284.3722
Please consider the environment before printing this e-mail

From: **Andrews, Averyl** <Averyl.Andrews@sephora.com>
Date: Mon, Mar 27, 2017 at 5:28 PM
Subject: RE: FW: Introduction To SAHI
To: Shelly Sahi <sheleen@sahicosmetics.com>

All the best to you in the future! Congrats on all you have accomplished so far ☺

**Averyl Andrews**

**SEPHORA**
Senior Merchant, Color
tel. 415.284.3722
Please consider the environment before printing this e-mail.

49.     Sahi spent the next two years growing and contacted Sephora on April 20, 2019,

to negotiate having Sephora® sell Sahi's primer serum and other Sahi products. Sephora® did

not respond to Sahi's April 20, 2019, email. An image of Sahi's April 20, 2019, email to

Sephora® with a copy of a picture of Sahi's Macy's pop-up is produced below.

From: **Sheleen Sahi** <sheleen@sahicosmetics.com>
Date: Sat, Apr 20, 2019 at 7:35 PM
Subject: Update on SAHI Cosmetics
To: <Averyl.Andrews@sephora.com>

Hi Averyl,

Would love to connect. We've been selling at Macy's in LA and Orange County and a people people have asked if we are at Sephora as well.

We have a new line of foundation by undertone that's done really well and I think it's worth talking about a potential partnership.

If you are interested, I can set up an in person meeting with one of my teammates that's local to the Bay Area.

Cheers,
Shelly



50.    At least as early as March 9, 2019, about six weeks before Sahi contacted Sephora® again about selling Sahi's products because Sahi had grown, Sephora® started selling Defendant's OPAL in its stores and on its website.

51.    On information and belief, Sephora® did not respond to Sahi's April 20, 2019, email because Sephora® was already selling Defendant's OPAL, which looks exactly like Sahi's primer serum.

52.    As a result of Defendant's engagement in unfair competition, Sahi has suffered and will continue to suffer economic losses in an amount to be proven at trial and other harm to the goodwill represented by the SAHI Trade Dress in an amount that cannot be fully measured or adequately compensated in economic terms.

53.    Defendant's acts are likely to deceive the public in that they mislead members of the public into believing that Defendant's product comes from Sahi and/or that there is an

affiliation between Sahi and Defendant or between their respective products, and/or that

Sahi endorses or sponsors or has granted a license for Defendant's product or that Defendant

endorses or sponsors or has been granted a license for Sahi's product.

<strong>PRAYER FOR RELIEF</strong>

WHEREFORE, Plaintiff requests that judgment be entered as follows:

A.      That Defendant, their principals, partners, franchisees, agents, employees,

licensees, affiliates, distributors, producers, attorneys and representatives and all of those in

privity with or acting under the direction or control of any of them, be preliminarily and

permanently enjoined and restrained from:

1.   Using the SAHI Trade Dress or any packaging design confusingly similar to

the SAHI Trade Dress, in connection with the advertisement, promotion, distribution,

offering for sale or selling of any goods or services, including without limitation the

advertisement, promotion, distribution, offering for sale or sale of the Infringing Products;

2.   Performing any acts or using any trade dress, trademarks, names, words, images

or phrases that are likely to cause confusion, to cause mistake, to deceive or otherwise

mislead the trade or public into believing that Sahi and Defendant are one and the same or

are in some way connected or that Sahi has endorsed, licensed, or is a sponsor of Defendant

(or that Defendant has endorsed, licensed, or is a sponsor of Sahi) or that the

goods or services of Defendant originate with Sahi or any authorized user of the SAHI Trade

Dress or are likely to lead the trade or public to associate Defendant with Sahi; and

3.   Engaging in acts of unfair competition, as defined by the Michigan Consumer

Protection Act § 445.903 §§ 3 *et seq*.

B.      That Defendant be required to file with the Court and serve on Sahi a

statement under oath evidencing compliance with any preliminary or permanent injunctive relief ordered by the Court within fourteen (14) days after the entry of such order of injunctive relief;

C.     That Defendant, its principals, partners, franchisees, agents, employees, licensees, affiliates, distributors, producers, attorneys and representatives and all of those in privity with or acting under the direction or control of any of them be required to deliver up for destruction all advertising, promotional materials, point of sale materials, labels, packaging, and any other materials bearing the infringing marks together with all artwork, plates, molds, matrices and other means and materials for making and reproducing the same;

D.     That Defendant be ordered to disgorge all profits attributable to its infringement of the SAHI Trade Dress, in an amount to be determined at trial, and that such amount be trebled;

E.     That Sahi be awarded all actual damages caused by Defendant's infringement of the SAHI Trade Dress, in an amount to be determined at trial, and that such amount be trebled;

F.     That Sahi be awarded full restitution for all damage caused by Defendant's infringement of the SAHI Trade Dress, in an amount to be determined at trial;

G.     That Sahi be awarded damages in the form of corrective advertising required to remedy Defendant's infringement of the SAHI Trade Dress, in an amount to be determined at trial;

H.     That Sahi be awarded damages in the form of a reasonable royalty to compensate it for Defendant's infringement of the SAHI Trade Dress, in an amount to be determined at trial;

I.      That Plaintiff recover its reasonable attorneys' fees and costs of suit under 15

U.S.C. § 1117, as this case is exceptional; and

J.      That Sahi be granted such other and further relief as this Court shall deem,

just, lawful or equitable.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all claims and issues so triable.

Dated: January 14, 2021

Respectfully Submitted,


_/s/Jehan Crump-Gibson____
Jehan Crump-Gibson, Esq.
Counsel for Plaintiff
Great Lakes Legal Group PLLC
One Towne Square, Ste. 1835
Southfield, MI 48076
Telephone: (248) 395-3699
Email: jehan@gllegalgroup.com

Jeanette M. Braun, Esq.
Counsel for Plaintiff
(Application for Admittance to Michigan
Eastern District Will Be Submitted)
Braun IP Law, LLC
1600 W Lake St., Suite 103B
Addison, IL 60101
Telephone: (773) 504-4036
Email: jmbraun@brauniplaw.com