# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

SAHI COSMETICS L.L.C.,

        *Plaintiff,*

v.

REA.DEEMING BEAUTY, INC.
D/B/A BEAUTYBLENDER,

        *Defendant.*

Case No. 2:21-cv-10108-LJM-CI

Assigned to Hon. Laurie J. Michelson
Magistrate Judge Curtis Ivy, Jr.

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT OF MOTION**

**(Fed. R. Civ. P. 12(b)(6))**

## MOTION TO DISMISS

Defendant Rea.Deeming Beauty, Inc. d/b/a Beautyblender ("RBI") moves to dismiss the Complaint filed by Plaintiff Sahi Cosmetics, LLC ("Sahi"), and each claim for relief in it, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of its motion, RBI submits the attached memorandum.

Pursuant to Local Rule 7.1(a), RBI's counsel conferred telephonically with Sahi's counsel on April 16, 2021 and explained the nature of RBI's motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Dated:  April 19, 2021
       Los Angeles, California.

Respectfully submitted,

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP


By:  /s/ Aaron J. Moss
     Aaron J. Moss, Cal. Bar No. 190625
     Joshua M. Geller, Cal. Bar No. 295412
     2049 Century Park East, Suite 2600
     Los Angeles, California  90067
     310.553.3610
     amoss@ggfirm.com
     jgeller@ggfirm.com

     FISHMAN STEWART, PLLC
     Maxwell Goss, Bar No. P78594
     600 Tower Dr., Suite 610
     Troy, Michigan 48098
     248.594.0604
     mgoss@fishstewip.com

     *Attorneys for Defendant*
     *REA.DEEMING BEAUTY, INC. D/B/A*
     *BEAUTY BLENDER*

73611-00016/3997129.6

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................1

II.  FACTUAL BACKGROUND...............................................................2

    A.  The Products.................................................................2

    B.  Sahi's Claims...............................................................4

    C.  The USPTO Rejected Sahi's Trademark Application .........................5

III.  LEGAL STANDARD ...................................................................6

IV.  SAHI DOES NOT PLAUSIBLY ALLEGE THAT THE TRADE DRESS IS PROTECTIBLE...........................................................7

    A.  Sahi does not plausibly allege that the trade dress has acquired secondary meaning. ...........................................................7

    B.  Sahi does not plausibly allege that the trade dress is non-functional.................................................................12

V.  SAHI DOES NOT PLAUSIBLY ALLEGE THAT RBI ENGAGED IN A "TRADEMARK USE" OF THE PURPORTED TRADE DRESS.................................................................14

VI.  SAHI DOES NOT PLAUSIBLY ALLEGE LIKELIHOOD OF CONFUSION. ...................................................................17

    A.  Sahi does not allege any facts relating to likelihood of confusion. ...................................................................17

    B.  As a matter of law, the respective products are so dissimilar that Sahi's claim of confusion is implausible on its face. .........................19

VII.  SAHI'S CLAIM FOR UNFAIR COMPETITION IS EXEMPTED BY THE MICHIGAN CONSUMER PROTECTION ACT...............................21

VIII.  SAHI SHOULD NOT BE GRANTED LEAVE TO AMEND ....................23

IX.  CONCLUSION.................................................................24

73611-00016/3997129.6

# TABLE OF AUTHORITIES

**Page**

CASES

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*,
  280 F.3d 619 (6th Cir. 2002) ...................................................................vi, 7, 19

*Am. Roll Form Corp. v. Chamberlain Grp., Inc.*,
  No. 1:14 CV 2321, 2015 WL 900715 (N.D. Ohio Mar. 2, 2015) .....................18

*Armengau v. Cline*,
  7 F. App'x 336 (6th Cir. 2001) .........................................................................21

*Ass'n of Cleveland Fire Fighters v. City of Cleveland*,
  502 F.3d 545 (6th Cir. 2007) ..............................................................................6

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
  528 F.3d 426 (6th Cir. 2008) ............................................................................20

*Bechhold v. Dreamweaver Lure Co.*,
  No. 1:02-CV-532, 2008 WL 607405 (W.D. Mich. Feb. 29, 2008)....................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................6

*Beydoun v. Sessions*,
  871 F.3d 459 (6th Cir. 2017) ............................................................................23

*Davis v. Am. Broad. Companies, Inc.*,
  No. 1:10-CV-167, 2010 WL 2998476 (W.D. Mich. July 28, 2010) ..................21

*Dayco Prod., LLC v. Dorman Prod., Inc.*,
  No. 09-CV-13139, 2010 WL 3855221 (E.D. Mich. Sept. 28, 2010) ...................6

*Duronio v. Merck & Co.*,
  No. 267003, 2006 WL 1628516 (Mich. Ct. App. June 13, 2006)
  (unpublished) .....................................................................................................22

*Eggleston v. Daniels*,
  No. 15-11893, 2016 WL 4363013 (E.D. Mich. Aug. 16, 2016) ......................21

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000)............................................................................................23

*Gen. Motors Corp. v. Lanard Toys, Inc.*,
  468 F.3d 405 (6th Cir. 2006) ............................................................................10

*Gray-El v. Jennifer Lopez/Nuyorican Prods., Inc.*,
  No. 19-10952, 2019 WL 8750506 (E.D. Mich. Dec. 18, 2019).........................21

73611-00016/3997129.6

# TABLE OF AUTHORITIES
## (continued)

Page

*Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*,
730 F.3d 494 (6th Cir. 2013) ...................................................................8

*Hensley Mfg. v. ProPride, Inc.*,
579 F.3d 603 (6th Cir. 2009) ........................................... vi, 14, 15, 18

*Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*,
270 F.3d 298 (6th Cir. 2001) ...................................................................7

*Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*,
931 F.2d 1100 (6th Cir. 1991) ................................................................6

*Kassa v. Detroit Metro Convention & Visitors Bureau*,
150 F. Supp. 3d 831 (E.D. Mich. 2015), aff'd, 672 F. App'x 575
(6th Cir. 2017).................................................................... vi, 15, 16

*Leapers, Inc. v. SMTC, LLC*,
No. 14-CV-12290, 2014 WL 4964376 (E.D. Mich. Oct. 3, 2014) .....................6

*Leapers, Inc. v. SMTS, LLC*,
879 F.3d 731 (6th Cir. 2018) ..............................................................13

*Liss v. Lewiston-Richards, Inc.*,
478 Mich. 203 (2007) ...........................................................................22

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
209 F. Supp. 3d 612 (S.D.N.Y. 2016), *aff'd* 720 F. App'x 24 (2d
Cir. 2017) ...........................................................................................11

*Merrell Dow Pharms. Inc. v. Thompson*,
478 U.S. 804 (1986)...............................................................................23

*Mertik Maxitrol GMBH & Co. KG v. Honeywell Techs. SARL*, No. 10-
12257,
2012 WL 748304 (E.D. Mich. Mar. 6, 2012).....................................13

*Mike Vaughn Custom Sports, Inc. v. Piku*,
15 F. Supp. 3d 735 (E.D. Mich. 2014) ................................................8, 9, 12, 13

*Music Makers Holdings, LLC v. Sarro*,
No. RWT 09CV1836, 2010 WL 2807805 (D. Md. July 15, 2010)....................5

*Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*,
687 F. App'x 429 (6th Cir. 2017) .......................................... vi, 14, 18

*Oatly AB v. D's Nats. LLC*,
No. 1:17-CV-840, 2018 WL 3496386 (S.D. Ohio July 20, 2018) ..................5

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Pollick v. Kimberly-Clark Corp.*,
817 F. Supp. 2d 1005 (E.D. Mich. 2011) ...................................................20, 21

*Publications Int'l, Ltd. v. Landoll, Inc.*,
164 F.3d 337 (7th Cir. 1998) ................................................................9

*Qualitex Co. v. Jacobson Products Co., Inc.*,
514 U.S. 159 (1995).........................................................................vi, 9

*Select Distributors, LLC v. Breeze Smoke, LLC*,
No. 20-12944, 2021 WL 423202 (E.D. Mich. Feb. 8, 2021) ............................11

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
532 U.S. 23 (2001) ............................................................................12

*U.S. ex rel. Dingle v. BioPort Corp.*,
270 F. Supp. 2d 968 (W.D. Mich. 2003), aff'd 388 F.3d 209 (6th
Cir. 2004) .......................................................................................4

*Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
No. 12 CIV. 3599, 2013 WL 866867 (S.D.N.Y. Mar. 8, 2013).........................11

*Wal-Mart Stores, Inc. v. Samara Bros.*,
529 U.S. 205 (2000).........................................................................8

**STATUTES**

15 U.S.C.A. § 1125(a)(3).......................................................................12

Food, Drug, and Cosmetic Act of 1938 ...................................................22, 23

Lanham Act ....................................................................................5, 6

Michigan Consumer Protection Act.......................................................passim

73611-00016/3997129.6

## STATEMENT OF ISSUE PRESENTED

Should the Court dismiss Plaintiff's complaint, and all causes of action in it, without leave to amend for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)?  As the basis for this motion, Defendant contends that Plaintiff failed to adequately plead (a) that it has a protectible trade dress; (b) that any purported trade dress is non-functional; and (c) that there is any likelihood of consumer confusion.   Defendant also contends that Plaintiff's claim for unfair competition is exempted under the Michigan Consumer Protection Act.

73611-00016/3997129.6

## <u>CONTROLLING AUTHORITY</u>

FED. R. CIV. P. 12(b)(6)

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619 (6th Cir. 2002)

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009)

*Kassa v. Detroit Metro Convention & Visitors Bureau*, 150 F. Supp. 3d 831, 838 (E.D. Mich. 2015), aff'd, 672 F. App'x 575 (6th Cir. 2017)

*Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*, 687 F. App'x 429 (6th Cir. 2017)

*Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159 (1995)

73611-00016/3997129.6

## BRIEF IN SUPPORT OF MOTION TO DISMISS

## I.   INTRODUCTION

Plaintiff Sahi Cosmetics, LLC ("Sahi") alleges in its Complaint that

Defendant Rea.Deeming Beauty, Inc. ("RBI") improperly used the color of Sahi's

makeup primer serum in RBI's own serum product.  A makeup primer serum is a

gel applied to the skin to moisturize and prepare the skin for application of makeup

on top of the primer.  Notably, Sahi does not allege that RBI copied the formula for

Sahi's primer, nor does Sahi allege that RBI sells its primer in packaging that is

similar to Sahi's.  Sahi simply claims that the primer itself (i.e., the gel contained

inside the opaque container in which the primer is sold) is the same color as Sahi's.

Even if the colors were the same (and they are not), Sahi's trade dress infringement

claims and related state law claims all fail as a matter of law for several

independent reasons.

In order to state a claim for trade dress infringement as to a feature of a

product's design, Sahi must plausibly allege that the claimed design feature has

acquired secondary meaning—i.e., that it serves a source-identifying function in

the minds of consumers—and also that it is non-functional.  Without any facts

supporting either allegation, there can be no protectible trade dress and no claim

for infringement.

In addition, Sahi must plausibly allege that consumers are likely to be confused as to the source of the product based on RBI's purported use of the trade dress.  Sahi cannot do that.  First, even if RBI were using the same color for its product, RBI is not using the color as a source identifier, and therefore there is no actionable "trademark use."  Second, Sahi does not include a single factual allegation in its complaint that would raise a plausible inference of consumer confusion.  Third, Sahi's allegation that the product colors are similar is readily contradicted by a visual comparison of the products, which the Court may conduct for itself on this motion (under the incorporation by reference doctrine) to see exactly how frivolous Sahi's claims truly are.

In short, Sahi is seeking trademark protection for something that trademark law does not protect.  Sahi's complaint is devoid of any factual allegations to state a plausible claim for relief.  Finally, Sahi is misrepresenting to the Court the nature of the products at issue.  For any or all of these independent reasons, the Court should dismiss Sahi's complaint in its entirety without leave to amend.

## II.   <u>FACTUAL BACKGROUND</u>

### A.   <u>The Products</u>

For purposes of this motion only, RBI accepts as true the factual allegations in Sahi's complaint.  Sahi alleges that it is a start-up beauty brand that sells cosmetics and related products.  Compl. at ¶ 8.  It sells a makeup primer serum

product referred to as the "Mystic primer serum." *Id.* ¶ 16.  Sahi contends that the Mystic primer serum has "an iridescent pearl multicolor hue with a blue to pink shift when pivoted in the light." *Id.*  As depicted in photographs included in the complaint, the primer serum itself is a gel-like product that is contained in a plastic tube sold inside a box, both of which are labeled with Sahi's brand name (Sahi Cosmetics) and the product name (Mystic). *See, e.g.*, Compl. at p. 5.  The tube is opaque and is colored with a metallic-looking rose gold, with no blue or pink coloring. *Id.*  The box it comes in is black.  Compl., Ex. M at p. 60 of 64.

RBI is a renowned beauty brand that sells cosmetics and cosmetic-related products, including its signature beautyblender® makeup sponge.  RBI sells a makeup primer serum called "Opal Essence."  Compl. at ¶ 20.  The product is stored in an opaque container labeled with RBI's brand name (beautyblender®) and product name (Opal Essence). *Id.*  The container is primarily white, with a partial, light pink sheen. *Id.*

Samples of Sahi's Mystic primer serum and RBI's Opal Essence primer serum are being filed in the traditional manner concurrently with this Motion as Exhibits 1 & 2 respectively. *See* Index of Exhibits; Declaration of JoAnna Blythe ("Blythe Decl.") at ¶¶ 2–5.

B.    Sahi's Claims

In August 2020, Sahi's principal (Sheleen Sahi) posted a video on the social media site TikTok, claiming that RBI had copied her Mystic primer serum. Compl. at ¶ 27.  At that time, her allegations made no mention of the color of the Mystic primer serum, nor any purportedly protectible trade dress in that color.  A recording of that TikTok video is being filed in the traditional manner concurrently with this Motion as Exhibit 3.  In that video, Sahi's principal specifically identifies the product texture and product ingredients as purportedly infringing (allegations not asserted in this action), but makes no mention of the color.  Declaration of Josh Geller ("Geller Decl."), ¶¶ 2–3 and Exh. 3.  The parties exchanged several emails about Sahi's allegations until about October 1, 2020.  *See* Compl. at pp 12–16.

On or about December 3, 2020 (after Sahi first asserted that its product had been copied), Sahi applied for a certificate of registration of a "color mark for iridescent pearl multicolor hue with a blue to pink shift" from the State of Michigan, which was registered on December 11, 2020.   Compl., Ex. N.[1]

---

[1] The Complaint exhibit omits the registration application, which is publicly available on the website for the Michigan Department of Licensing and Regulatory Affairs and reflects that the application was signed and notarized on December 3, 2020.  *See* https://cofs.lara.state.mi.us/corpweb/CorpSearch/ CorpSummary.aspx?ID=802571178&SEARCH_TYPE=5.  The Court may take judicial notice of the filing date of the Application for Registration, as it is a government record that is publicly available.  *U.S. ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003), aff'd 388 F.3d 209 (6th Cir. 2004).

Sahi filed this lawsuit on January 14, 2021, alleging claims for trade dress infringement under the Lanham Act, trade dress infringement under Michigan law, unfair competition under the Michigan Consumer Protection Act, and common law unfair competition.

C.    The USPTO Rejected Sahi's Trademark Application

On March 16, 2021, the United States Patent and Trademark Office (USPTO) issued a nonfinal office action refusing to register Sahi's application for a color mark based on the blue/pink color-shifting hue of the Mystic primer serum. *See* Geller Decl., Exh. 4.[2]

The USPTO refused Sahi's application because "the applied-for mark fails to function as a trademark because it consists solely of multiple colors used on the goods." Exh. 4 at p. 2. The USPTO found that "it is common for the same type of goods (make-up primer) to come in various colors, including, green, purple, yellow, blue and pink and also to come in multiple colors," and cited numerous

---

[2] The Court may take judicial notice of the USPTO Office Action (refusal to register), which was issued in response to Sahi's September 10, 2020 federal trademark application seeking protection for an "iridescent pearl multicolor hue with a blue to pink shift" as a feature of Sahi's claimed mark. *Music Makers Holdings, LLC v. Sarro*, No. RWT 09CV1836, 2010 WL 2807805, at *2 (D. Md. July 15, 2010) ("The Court may take judicial notice of matters of public record from sources—such as the PTO—whose accuracy cannot be reasonably questioned."); *Oatly AB v. D's Nats. LLC*, No. 1:17-CV-840, 2018 WL 3496386, at *6 (S.D. Ohio July 20, 2018) (The Court "can take judicial notice of the records of the USPTO showing that [] trademark applications . . . have been preliminarily refused.").

examples of similar color patterns. *Id.* Based on this survey of similar products, the USPTO found that "purchasers are unlikely to attribute a particular color as identifying the source of the goods." *Id.* The USPTO emphasized that: "The burden of proving that a color mark has acquired distinctiveness is substantial." *Id.*

## III. <u>LEGAL STANDARD</u>

In order to state a claim for relief, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff is obliged "to provide the grounds of [its] entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Sahi's complaint alleges claims for trade dress infringement, a species of trade dress infringement.[3] "Trade dress refers to 'the image and overall appearance

---

[3] Each of Sahi's claims relies on the same factual predicate and the same legal elements as its trade dress infringement claim, and so may be considered in unison. *Leapers, Inc. v. SMTC, LLC*, No. 14-CV-12290, 2014 WL 4964376, at *1–2 (E.D. Mich. Oct. 3, 2014) (holding that the same standards governing a Lanham Act trade dress infringement claim also govern claims for common law trademark infringement, unfair competition, Michigan state law trademark infringement, and violation of the Michigan Consumer Protection Act); *Dayco Prod., LLC v. Dorman Prod., Inc.*, No. 09-CV-13139, 2010 WL 3855221, at *3 (E.D. Mich. Sept. 28, 2010) (trade dress infringement claim under the Lanham Act is consistent with and disposes of Michigan unfair competition claim); *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1105 n.1 (6th Cir. 1991) (Lanham Act

of a product.' . . . It 'embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, intended to make the source of the product distinguishable from another and to promote its sale.'" *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 308 (6th Cir. 2001).

The elements of a trade dress infringement claim are "1) that the trade dress in question is distinctive in the marketplace, thereby indicating the source of the good it dresses, 2) that the trade dress is primarily nonfunctional, and 3) that the trade dress of the competing good is confusingly similar." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002).

## IV.    SAHI DOES NOT PLAUSIBLY ALLEGE THAT THE TRADE DRESS IS PROTECTIBLE.

### A.    Sahi does not plausibly allege that the trade dress has acquired secondary meaning.

In order to state a claim for relief, Sahi must first plausibly allege that its trade dress is protectible under trademark law as a distinctive source identifier—

---

"likelihood of confusion standard" applies to claims under the Michigan Consumer Protection Act and for common law unfair competition). If the trade dress claim fails, then all of Sahi's claims fail.

i.e., that the trade dress itself serves to convey to consumers that the product is a Sahi product.

Sahi's claimed trade dress is an aspect of the product design itself—the product color—and not the product packaging. Importantly, the Supreme Court has specifically held that a product's color, and a product's design more generally, cannot be inherently distinctive. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211–12 (2000) (holding that "design, like color, is not inherently distinctive"). As such, trade dress "based on product design is protectable if the trade dress has acquired secondary meaning." *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 745 (E.D. Mich. 2014).

Secondary meaning (also known as "acquired meaning") indicates that "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 504 (6th Cir. 2013). Courts must use "particular caution" when determining whether a product design has acquired secondary meaning. *Mike Vaughn*, 15 F. Supp. 3d at 745. This is because trade dress "claims based on product design raise a 'potent risk' that relief will hamper efforts to market competitive goods; create a monopoly in the goods themselves rather than a word, phrase, or symbol; and undermine restrictions in

copyright and patent law that are designed to avoid granting monopolies to products and ideas."[4] *Id.*

In this case, Sahi does not meet the high bar for alleging secondary meaning in its product's color. Sahi does not even attempt to do so. Instead, Sahi's complaint asserts that the color of the Mystic primer serum is "inherently distinctive." Compl. at ¶¶ 1, 6, 24, 31. But as the Supreme Court unanimously held in *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 162–63 (1995), the color of a product design (as opposed to its product packaging) may *only* obtain trade dress protection if it has acquired secondary meaning.

Sahi does not plead *any* facts that would suggest that the color of its Mystic primer serum has acquired any secondary meaning in the eyes of the consuming public. Nor can Sahi do so as a matter of law.

It is axiomatic that for trade dress to have acquired secondary meaning in the eyes of the public, it must be ***visible*** to the eyes of the public. *E.g.*, *Mike Vaughn*, 15 F. Supp. 3d at 745 ("Trade dress refers to the image and overall appearance of a product."); *see also Publications Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 338 (7th Cir. 1998) ("To function as an identifier, the appearance must be distinctive by

---

[4] Indeed, that is exactly what Plaintiff doing here. Plaintiff originally sent demand letters to RBI asserting that RBI's primer serum copied Plaintiff's formula. That was untrue. It was also not legally cognizable, as Plaintiff's formula is not patented or otherwise protectable. Recognizing that deficiency, Plaintiff has now pivoted to the meritless trade dress claim at issue in this action.

reason of the shape or color or texture or other visible or otherwise palpable feature of the product or its packaging.").

Here, Sahi readily concedes that its so-called "trade dress" is *not* visible: "The SAHI Trade Dress cannot be seen when the primer serum is rubbed or patted into the skin. Wearers of Sahi's primer serum do not appear to have a color shifting rainbow on their skin after application of Plaintiff's primer serum to their skin." Compl. at ¶ 17. Nor is the serum visible through the product's packaging, an opaque plastic tube. Compl. at ¶ 16, p. 9 (depicting the opaque tube in which Sahi's serum is sold).

Something that the public never sees cannot possibly (let alone plausibly) convey some distinctive meaning that serves to differentiate the product from those of other primer serums. Nor does Sahi allege the presence of any of the factors considered by this Court to determine whether a trade dress has acquired secondary meaning: "(1) direct consumer testimony, (2) consumer surveys, (3) exclusivity, length, and manner of use, (4) amount and manner of advertising, (5) amount of sales and number of customers, (6) established place in the market, and (7) proof of intentional copying." *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 418 (6th Cir. 2006).

While RBI recognizes that Plaintiff does not need to *prove* these elements at this juncture, Plaintiff still has an obligation to adequately plead facts relating to

these elements so as to state a plausible claim for relief. Plaintiff has not, and cannot, do so.

For example, Sahi has not alleged any actual association in the minds of consumers—no unsolicited consumer testimonials or survey evidence whatsoever. Such evidence is "particularly important," in assessing whether secondary meaning has been shown. *Select Distributors, LLC v. Breeze Smoke, LLC*, No. 20-12944, 2021 WL 423202, at *3 (E.D. Mich. Feb. 8, 2021).

Instead, Sahi simply argues that a brief video put out by FabFitFun (a subscription service that sells, among other things, cosmetic and beauty products) depicted Sahi's primer serum being applied to the skin. Compl. at ¶ 19. The video—a link to which is included in Sahi's Complaint—shows a brief shot of the Sahi product being applied to one of the host's hands, but at no point is the color emphasized or even referenced. *See, e.g.*, *Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 CIV. 3599, 2013 WL 866867, at *3 (S.D.N.Y. Mar. 8, 2013) (finding no secondary meaning "because there is no contention that any of those advertisements or promotions stressed or emphasized the alleged trade dress"); *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 658–59 (S.D.N.Y. 2016), *aff'd* 720 F. App'x 24 (2d Cir. 2017) (no secondary meaning where videos did not "refer or call attention to the [trade dress], as an indicator of source or otherwise"). Moreover, because the product packaging (i.e.,

the tube itself) was visible throughout the video, to the extent that any consumer association was established, the logical inference is that the prominent *packaging and labeling* created that association, not the color of the product.

Without alleging the essential element of secondary meaning (and with no basis to do so), Sahi's claims should be dismissed.

B.    Sahi does not plausibly allege that the trade dress is non-functional.

In a trade dress infringement action, "the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C.A. § 1125(a)(3).  A product design feature is functional "when it is essential to the use or purpose of the device or when it affects the cost or quality of the device." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001).  Courts are cautious to find that a product's design is nonfunctional because "product design almost invariably serves purposes other than source identification." *TrafFix Devices*, 532 U.S. at 29.

A plaintiff is not permitted, as Sahi has done here, to conclusorily assert that its alleged trade dress is non-functional. *Mike Vaughn*, 15 F. Supp. 3d at 746. "The failure to plead non-functionality with factual particularity establishes merely the possibility and not the plausibility of [relief] and is therefore fatal to [a plaintiff's] trade dress claim." *Id*. at 747.  In *Mike Vaughn*, the district court found that the bare allegation that a product featured "non-functional elements" was

"conclusory and therefore not entitled to the presumption of truth." *Id.* The

district court reached the same conclusion in *Mertik Maxitrol GMBH & Co. KG v.*

*Honeywell Techs. SARL, No. 10-12257*, 2012 WL 748304 (E.D. Mich. Mar. 6,

2012). There, the court found that plaintiff's bare assertion of non-functionality

was conclusory and insufficient to carry plaintiff's pleading burden. *Id.* at *6.

Here, Sahi's entire claim of non-functionality is contained in paragraph 17

of the Complaint. Sahi simply states that the color of the product "does not

improve the function of the primer serum." Instead, Sahi claims that the color "is

merely to dress the primer serum in an ethereal way to make it distinguishable in a

crowded market." *Id.* This formulaic recitation of non-functionality says nothing

about what gives the product its color. Without that information, it is impossible to

reasonably conclude that the color is in fact non-functional.

Importantly, it is not sufficient to simply allege that a product design feature

is aesthetic, as an aesthetic feature may still be functional. *Leapers, Inc. v. SMTS,*

*LLC*, 879 F.3d 731, 736–37 (6th Cir. 2018). "[N]ot every design created for an

aesthetic purpose will turn out to be nonfunctional. Indeed, a design might turn out

to have functional value despite any original aesthetic intent if the design becomes

'essential to the use or purpose of the article' or if it turns out to 'affect[] the cost

or quality of the article.'" *Id.* Because Sahi does not explain how or why the

product has the color it does, the court cannot reasonably conclude on the facts as alleged that the color serves no functional purpose.

## V.   **SAHI DOES NOT PLAUSIBLY ALLEGE THAT RBI ENGAGED IN A "TRADEMARK USE" OF THE PURPORTED TRADE DRESS.**

Before the Court engages in a likelihood of confusion analysis, it must first answer "a preliminary question: whether the defendants 'are using the challenged mark in a way that identifies the source of their goods.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009). If a defendant is not using a plaintiff's mark as a source identifier, then it is irrelevant how similar the marks are or whether there is any likelihood of consumer confusion—trademark law simply is not implicated. *Id.* ("If they are not [using the mark as a source identifier], then the mark is being used in a 'non-trademark' way and trademark infringement laws, along with the eight-factor [confusion] analysis, do not even apply."); *see also Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*, 687 F. App'x 429, 433–34 (6th Cir. 2017) (dismissing trademark infringement claim where defendant's use of plaintiff's mark was a "non-trademark use").

"Simply put, if a defendant does not use a mark to 'identif[y] the source' of its goods or services, then as a matter of law a plaintiff cannot establish a likelihood of confusion—and cannot prevail on a federal trademark infringement

claim." *Kassa v. Detroit Metro Convention & Visitors Bureau*, 150 F. Supp. 3d

831, 838 (E.D. Mich. 2015), aff'd, 672 F. App'x 575 (6th Cir. 2017).

For instance, it is not trademark infringement to copy a trademarked slogan

of another company, so long as the copying party is not using that slogan to

identify the source of its product (and thereby confuse consumers). This

distinction is well explained in *Kassa*. There, the plaintiff trademarked the slogan

"Welcome to the D" for various purposes relating to plaintiff's entertainment

programming. The defendant used that same exact slogan in connection with

various sporting events. The district court found (and the Sixth Circuit affirmed)

that the defendant "did not use the phrase 'Welcome to the D' to identify the

source of any goods or services." *Id.* at 838. To the contrary: the slogan appeared

on banners that explicitly included "the logos of both Defendants to identify them

as the source of the messages." *Id.* Even though the defendants had literally

copied the plaintiff's trademark, because they did not use it as a source identifier

and prominently displayed their own logos and branding alongside it, there could

be no actionable trademark confusion as a matter of law.

The same logic that the Sixth Circuit applied in *Hensley* and in affirming

*Kassa* applies here. Even if one were to assume for the sake of argument that Sahi

had a protectible trade dress in the color of its primer serum, and even if one were

to assume that RBI copied it exactly (neither of which is true), the alleged "use" is

still not a source identifying use and therefore cannot sustain a trade dress infringement claim.

It defies any logic to suggest that the color of a product *that is only visible after it is already purchased* and squeezed out of an opaque container is being used by RBI to identify the source of the product.  Instead, it is the actual label on the product (and its accompanying packaging) that distinctly identifies the product as belonging to RBI.  *See, e.g.*, Compl. at p. 8 (showing images of RBI's Opal Essence in its packaging and sealed container).  Just like the banner in *Kassa* that used the plaintiff's mark but prominently displayed the defendant's logo, so too is RBI's branding prominently displayed long before any consumer would see the product color inside.

The distinction here is important, because what Sahi is attempting to do is use trademark law to create legal protection for something that is simply not protectible.  If Sahi believed that it had a unique invention in its primer serum, it could try to get it patented and police the marketplace that way.  If Sahi had some advertising, branding, or packaging that distinguished its product, it could perhaps use trademark law to police those who misuse those elements.  But the fact that Sahi believes its product has a unique color (unbeknownst to a purchasing consumer) does not give Sahi a legal monopoly on the use of that color.

Even an identical copy of another's trade dress cannot give rise to an infringement claim if the trade dress is not used to identify the source of the product. Sahi's claims fail as a matter of law because of this critical distinction.

## VI. <u>SAHI DOES NOT PLAUSIBLY ALLEGE LIKELIHOOD OF CONFUSION.</u>

Even if Sahi were able to establish that it had a protectible trade dress in the color of its product and that RBI was using that trade dress as a source identifier of RBI's product (and it cannot), Sahi would still need to plausibly allege that such use is likely to cause consumer confusion. Sahi cannot do so. First, Sahi has made no factual allegations whatsoever to support its conclusory contention that there is a likelihood of confusion. Second, as a matter of law, the product designs are so dissimilar that Sahi's claim is implausible on its face.

A. <u>Sahi does not allege any facts relating to likelihood of confusion.</u>

Sahi omits any factual allegations of consumer confusion. This is an independent basis for dismissing the complaint.

The absence of such allegations is stark. At page 11 of the Complaint, Sahi begins a section entitled "Likelihood of Confusion." In paragraph 26, Sahi makes its first statement about confusion, stating: "Defendant's unauthorized use of the SAHI Trade Dress in connection with its OPAL product is likely to cause confusion, or to cause mistake, or to deceive concerning the source of the parties'

goods and/or services and/or whether Sahi has sponsored, endorsed or licensed Defendant's product (or vice versa) and/or whether there is any connection or affiliation between Defendant and Sahi."  Compl. at ¶ 26.  This statement is, of course, a mere legal conclusion and is not sufficient to carry Sahi's pleading burden.  *See Hensley*, 579 F.3d at 611.

The remainder of this "Likelihood of Confusion" section of Sahi's Complaint has nothing to do with confusion.  Sahi describes in detail a series of email exchanges between it and RBI in which Sahi asserted claims of infringement and RBI denied them.  Compl. at pp. 11–16.  Nothing in any of these exchanges makes any mention of confusion.

To put it bluntly: There are <u>zero</u> factual allegations of confusion in the Complaint.  On that basis alone, Sahi's claims must be dismissed.  *E.g.*, *Hensley*, 579 F.3d at 613 ("[M]ere speculation is insufficient; it was [plaintiff's] burden to allege those facts, if they indeed exist, in the first instance."); *Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*, 687 F. App'x 429, 433 (6th Cir. 2017) (granting motion to dismiss where allegation of confusion was "conclusory" and plaintiff pleaded "no facts" to support such a claim); *Am. Roll Form Corp. v. Chamberlain Grp., Inc.*, No. 1:14 CV 2321, 2015 WL 900715, at *4 (N.D. Ohio Mar. 2, 2015) (granting motion to dismiss where there was not "any allegation that the public is likely to be confused").

B.     As a matter of law, the respective products are so dissimilar that
       Sahi's claim of confusion is implausible on its face.

The Sixth Circuit has held that when "trade dresses are so 'clearly distinguishable and would appear so to all but the most obtuse consumer,'" then "a court may resolve the issue of the dresses' similarity as a matter of law." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 648 (6th Cir. 2002); *Bechhold v. Dreamweaver Lure Co.*, No. 1:02-CV-532, 2008 WL 607405, at *3 (W.D. Mich. Feb. 29, 2008) ("Clearly dissimilar trade dresses can result in a finding of no likelihood of confusion as a matter of law.").

In this case, the dissimilarity of the products' purported trade dress is so facially obvious as to warrant dismissing the action simply on the pleadings.  The photographs that Sahi includes with its complaint are, at best, disingenuous.  In reality, the primers simply are not the color that they appear to be in the photographs included on page 9 of the complaint.  As such, RBI has lodged with the Court genuine, authenticated samples of the products at issue.  *See* Index of Exhibits, Exh. 1 & 2; Blythe Decl. at ¶¶ 2–5.  The Court is invited to view the products and see for itself.[5]  In any lighting that RBI and its counsel viewed the products, it was clear that the colors were not as Sahi describes.  RBI's Opal

---

[5] As discussed below, the Court is permitted to do so even on a motion to dismiss.

Essence primer appears pale purple.  Sahi's Mystic primer appears blue/green, with hints of pink.  The supposed "color shift" from blue to pink described in Sahi's complaint is not readily apparent in either product.

This case is akin to *Pollick v. Kimberly-Clark Corp.*, 817 F. Supp. 2d 1005 (E.D. Mich. 2011), where the district court found that the photographs included in the complaint were inadequate to compare the products and therefore considered additional evidence submitted by the defendants as to the true appearance of the competing products.  *Id.* at 1007 n.2 (noting that plaintiff had included "full-page images of [its product], but only thumbnail images of Defendant's").

RBI is mindful that, in most situations, questions of similarity are not susceptible for resolution on a motion to dismiss.  But here, where the products are incorporated by reference in the Complaint and can be readily examined by the Court, the palpable dissimilarity between them necessitates a finding that Sahi's allegations are facially implausible.

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  Courts in this Circuit "have taken a liberal view of what matters fall within

the pleadings for purposes of Rule 12(b)(6)." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001).

Sahi's case turns on the particular appearance of Sahi's Mystic primer serum and RBI's Opal Essence primer serum. RBI has lodged as exhibits genuine samples of each product. *See* Notice of Filing Exhibits in the Traditional Manner; Declaration of JoAnna Blythe ("Blythe Decl."). The district court "may properly take judicial notice of the allegedly infringing design on a Rule 12(b)(6) motion." *Pollick v. Kimberly-Clark Corp.*, 817 F. Supp. 2d 1005, 1007 n.2 (E.D. Mich. 2011). District courts in this circuit routinely consider exhibits—including physical exhibits—lodged with a motion to dismiss where those items are "referred to in the complaint and [] central to plaintiff's claims." *Gray-El v. Jennifer Lopez/Nuyorican Prods., Inc.*, No. 19-10952, 2019 WL 8750506, at *12 (E.D. Mich. Dec. 18, 2019), *report and recommendation adopted*, No. 19-CV-10952, 2020 WL 1060642 (E.D. Mich. Mar. 5, 2020) (considering video of allegedly infringing television episodes); *Eggleston v. Daniels*, No. 15-11893, 2016 WL 4363013, at *4 n.4 (E.D. Mich. Aug. 16, 2016) (same); *Davis v. Am. Broad. Companies, Inc.*, No. 1:10-CV-167, 2010 WL 2998476, at *5 (W.D. Mich. July 28, 2010) (same).

## VII. SAHI'S CLAIM FOR UNFAIR COMPETITION IS EXEMPTED BY THE MICHIGAN CONSUMER PROTECTION ACT.

Sahi's Second Cause of Action for unfair competition under the Michigan Consumer Protection Act ("MCPA") fails not only for the same reasons that its trade dress infringement claims fail, but also because the conduct at issue here is exempted from the scope of that statute.  While the MCPA prohibits certain unfair practices, the Act expressly exempts any "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 205–06 (2007).  "The relevant inquiry 'is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.'"  *Id.*

The dispute at issue here concerns the advertisement and sale of cosmetic products that are governed by the Food, Drug, and Cosmetic Act of 1938 (FDCA) and regulated by the federal Food and Drug Administration.  FDCA § 201(i).[6]  In an unpublished decision, the Michigan Court of Appeal found that such conduct is exempted from the MCPA.  *Duronio v. Merck & Co.*, No. 267003, 2006 WL 1628516, at *7 (Mich. Ct. App. June 13, 2006) (unpublished).  There, the Court of Appeal held that: "Because the general marketing and advertising activities

---

[6] See also FDA Authority Over Cosmetics, available at https://www.fda.gov/cosmetics/cosmetics-laws-regulations/fda-authority-over-cosmetics-how-cosmetics-are-not-fda-approved-are-fda-regulated (describing FDA regulation of cosmetics).

underlying plaintiff's MCPA claim are authorized and regulated under laws administered by the FDA, the exemption in MCL 445.904(1)(a) applies to plaintiff's MCPA claim. The trial court properly dismissed plaintiff's MCPA claim." *Id.*

While that appellate decision is unpublished, its reasoning is sound and should apply here. The FDCA governs cosmetic marketing, manufacturing, and distribution, and vests the FDA and FTC with powers to enforce regulations. *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 831 n.8 (1986); *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 135 (2000). The transaction at issue here—the advertising and sale of cosmetics products—is plainly regulated by federal regulatory agencies pursuant to the FDCA. For that reason, Sahi's claim under the MCPA must be dismissed without leave to amend.

## VIII. <u>SAHI SHOULD NOT BE GRANTED LEAVE TO AMEND</u>

If the Court grants RBI's motion to dismiss, it should also deny Sahi leave to amend. Leave to amend may be denied when amendment would be futile—i.e., if the complaint as amended "could not withstand a Rule 12(b)(6) motion to dismiss." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017).

First, if the Court dismisses this action because the products are so dissimilar as to preclude any claim for trade dress infringement, there is certainly nothing that Sahi could allege in an amended complaint that would change that outcome.

Second, if the Court dismisses because RBI's purported use of the product color is a non-trademark use or because Sahi cannot show secondary meaning in its use of the color, amendment would be futile.  Sahi has already alleged exactly what its purported trade dress is and how it is allegedly used by both Sahi and RBI. As a matter of law, Sahi cannot establish that the color of the product (which is not even present when rubbed into the skin) serves a source identifying function.

Third, if the Court finds that any other of Sahi's allegations are insufficiently specific—whether because there are inadequate allegations of non-functionality or consumer confusion—those too cannot be cured by amendment.  It is a logical impossibility that a consumer could be confused as to the source of the product based on the color, especially because to see the color of the product at all, the consumer must be holding a tube or container of the product that is prominently labeled with the source.  Nor is it plausible that the color of the product has a purely non-functional purpose—whether the color is derived from some functional ingredient or is included simply because the qualities of the color increase the aesthetic value of the product, each such allegation would fail to show non-functionality as a matter of law.

## IX.   <u>CONCLUSION</u>

Sahi's claims for trade dress infringement and its related state law claims fail for every possible reason.  Sahi is claiming rights in something that trade dress law

does not protect, because Sahi cannot plausibly allege that its product color is distinctive and non-functional. Sahi is challenging a purported use of its product color in a non-source identifying manner. Sahi also has no factual basis for alleging consumer confusion. Nor could there be, because the products are so facially dissimilar. Sahi's claims are frivolous and should be dismissed.

Dated: April 19, 2021
       Los Angeles, California.

Respectfully submitted,

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP


By: /s/ Aaron J. Moss
    Aaron J. Moss, Cal. Bar No. 190625
    Joshua M. Geller, Cal. Bar No. 295412
    2049 Century Park East, Suite 2600
    Los Angeles, California 90067
    310.553.3610
    amoss@ggfirm.com
    jgeller@ggfirm.com

    FISHMAN STEWART, PLLC
    Maxwell Goss, Bar No. P78594
    600 Tower Dr., Suite 610
    Troy, Michigan 48098
    248.594.0604
    mgoss@fishstewip.com

    *Attorneys for Defendant*
    *REA.DEEMING BEAUTY, INC. D/B/A*
    *BEAUTY BLENDER*