| **To:** | Sahi Cosmetics L.L.C. (jmbraun@brauniplaw.com) |
|---|---|
| **Subject:** | U.S. Trademark Application Serial No. 90170750 - SCTM0001 |
| **Sent:** | March 16, 2021 04:23:43 PM |
| **Sent As:** | ecom116@uspto.gov |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 90170750

**Mark:**

**Correspondence Address:**
JEANETTE M. BRAUN
BRAUN IP LAW
1600 W LAKE ST.,
SUITE 103B
ADDISON, IL 60101

**Applicant:** Sahi Cosmetics L.L.C.

**Reference/Docket No.** SCTM0001

**Correspondence Email Address:**

jmbraun@brauniplaw.com

## NONFINAL OFFICE ACTION

The USPTO must receive applicant's response to this letter within six months of the issue date below or the application will be **abandoned**. Respond using the Trademark Electronic Application System (TEAS). A link to the appropriate TEAS response form appears at the end of this Office action.

Issue date: **March 16, 2021**

The referenced application has been reviewed by the assigned trademark examining attorney.  Applicant must respond timely and completely to the issue(s) below.  15 U.S.C. §1062(b); 37 C.F.R. §§2.62, 2.65(a); TMEP §§711, 718.03.

**SEARCH OF OFFICE RECORDS**

The trademark examining attorney has searched the Office's  database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d).  TMEP §704.02; *see* 15 U.S.C. §1052(d).

**SUMMARY OF ISSUES TO WHICH APPLICANT MUST RESPOND:**
1. Refusal Under Sections 1, 2, and 45 – Color Is Not Distinctive
2. Requirement for Information
3. Requirement for a Clarified Color Claim
4. Requirement for a More Accurate Mark Description

**1.  Refusal Under Sections 1, 2, and 45 – Color is Not Distinctive**

Registration is refused because the applied-for color mark, consisting of one or more colors used on some or all of the surfaces of a product or product packaging, is not inherently distinctive.  Trademark Act Sections 1, 2, and 45, 15 U.S.C. §§1051-1052, 1127; *see Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 166, 34 USPQ2d 1161, 1164 (1995); *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 1121-23, 227 USPQ 417, 420-21 (Fed. Cir. 1985); TMEP §1202.05(a).  Such marks are registrable only on the Supplemental Register or on the Principal Register with sufficient proof of acquired distinctiveness.  *See In re Gen. Mills IP Holdings II, LLC*, 124 USPQ2d 1016, 1018 n.4 (TTAB 2017) (citing TMEP §1202.05(a)).

Color marks are never inherently distinctive and can only be registered on the Supplemental Register or on the Principal Register with sufficient proof of acquired distinctiveness.  *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 162-63, 34 USPQ2d 1161, 1162-63 (1995); *In re Gen. Mills IP Holdings II, LLC*, 124 USPQ2d 1016, 1018 & n.4 (TTAB 2017) (citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211-12, 54 USPQ2d 1065, 1068 (2000)); TMEP §1202.05(a).

In this instance, applicant seeks registration of the colors blue and pink used on make-up primer; as such, the applied-for mark fails to function as a trademark because it consists solely of multiple colors used on the goods.

More specifically, the attached material demonstrates that it is common for the same type of goods (make-up primer) to come in various colors, including, green, purple, yellow, blue and pink and also to come in multiple colors.  For example, ALMAY® 5-in-1 Correction Primer is shown in purple and green  (https://www.amazon.com/Almay-N-A-Primer-5-in-1/dp/B006OY1MO4/ref=sr_1_1?dchild=1&keywords=almay+5-in-1+correction+primer&qid=1615920389&sr=8-1, attached), while Mirenesse Correcting Primer Cushion is in green, pink and yellow (https://www.amazon.com/Mirenesse-Cosmetics-Tone-Correcting-Primer/dp/B077XP81B9/ref=sr_1_2?dchild=1&keywords=mirenesse+10+collagen+tone+correcting&qid=1615920561&sr=8-2, attached), and Physicians Formula Corrector + Primer is in yellow and green  (https://www.amazon.com/Physicians-Formula-Mineral-Talc-Free-Corrector/dp/B01N8W8WZE/ref=sr_1_16?dchild=1&keywords=physicians+formula+mineral+wear&qid=1615920675&sr=8-16, attached).
Thus, because the practice in the industry is to use colors in connection with the same or similar goods, purchasers are unlikely to attribute a particular color as identifying the source of the goods.

Therefore, here, where the mark consists solely of colors as applied to makeup primer, the mark is not inherently distinctive and registration is refused under Sections 1, 2, and 45 of the Trademark Act.

**Advisory regarding applicant's  response options.**  Applicant is advised that it may respond to the above refusal by submitting evidence and arguments against the refusal.  In addition, applicant may respond by doing one of the following:  (1) amending the application to seek registration under Trademark Act Section 2(f), or (2) amending the application to seek registration on the Supplemental Register.  *See* 15 U.S.C. §§1052(f), 1091.

The burden of proving that a color mark has acquired distinctiveness is substantial.  *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 227 USPQ 417 (Fed. Cir. 1985) (holding the color pink used on fibrous glass residential insulation to have acquired distinctiveness based on evidence of twenty-nine years'  use, extensive affidavit and documentary evidence, surveys, and extensive media advertising expenditures); *In re Am. Home Prods. Corp.*, 226 USPQ 327 (TTAB 1985) (holding combination of colors pink, white and yellow used on an analgesic/muscle relaxant

tablet to have acquired distinctiveness based on evidence of more than twenty years' use, extensive advertising, and sales of over two billion tablets from 1960-1980); *cf. In re Benetton Grp. S.p.A.*, 48 USPQ2d 1214 (TTAB 1998). **A mere statement of long-time use of the color mark is not sufficient; an applicant must provide evidence demonstrating that the color mark has acquired source-indicating significance in the minds of consumers**. TMEP §1202.05(a); *see* TMEP §1212.06.

That is, because the burden of proving that a color mark has acquired distinctiveness is substantial, a "five years' use statement" will be insufficient to show acquired distinctiveness. *See In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 227 USPQ 417 (Fed. Cir. 1985); TMEP §1212.05(a). Therefore, if applicant seeks to amend the application to seek registration pursuant to Section 2(f), applicant must provide additional evidence that the applied-for mark has acquired distinctiveness for the identified goods. *See In re Star Pharms., Inc.*, 225 USPQ 209 (TTAB 1985); TMEP §1212.02(g).

When determining whether the evidence shows the mark has acquired distinctiveness, the trademark examining attorney will consider the following six factors:  (1) association of the proposed mark (color) with a particular source by actual purchasers (typically measured by customer surveys linking the name to the source); (2) length, degree, and exclusivity of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) intentional copying; and (6) unsolicited media coverage.  *See Converse, Inc. v. ITC*, 909 F.3d 1110, 1120, 128 USPQ2d 1538, 1546 (Fed. Cir. 2018) ("the *Converse* factors").  "[N]o  single factor is determinative."  *In re Steelbuilding.com*, 415 F.3d at 1300, 75 USPQ2d at 1424; *see* TMEP §§1212.06 *et seq.*  Rather, all factors are weighed together in light of all the circumstances to determine whether the mark has acquired distinctiveness.  *In re Steelbuilding.com*, 415 F.3d at 1300, 75 USPQ2d at 1424.  This evidence must demonstrate that the relevant public understands the primary significance of the mark as identifying the *source* of applicant's product or service rather than identifying the product or service itself.  *In re Steelbuilding.com*, 415 F.3d at 1297, 75 USPQ2d at 1422.

Again, as an alternative to submitting evidence of acquired distinctiveness, applicant may amend the application to the Supplemental Register. Trademark Act Section 23, 15 U.S.C. §1091; *see*  37 C.F.R. §§2.47, 2.75(a); TMEP §§816, 1202.02(b)(ii).

## 2.  Requirement for Information

To permit proper examination of the applied-for color mark, applicant must provide the following information and documentation:

(1)    An explanation as to whether the identified colors alone or together serve any purpose as used on the goods

(2)    An explanation as to whether the identified colors are a natural by-product of the manufacturing process for the goods

(3)     Any available advertising, promotional or explanatory literature concerning the goods, particularly any material that relates specifically to the applied-for color mark

(4)    An explanation as to whether any statutes, regulations, ordinances, codes or industry standards require, regulate and/or standardize the use of the identified colors on the goods

(5)    An explanation as to the use of the identified colors (separately or together) in applicant's  industry and any other similar use of color in applicant's industry

(6)    An explanation describing any other similar use of color by applicant

(7)    An explanation as to whether competitors produce the goods in the identified colors and in colors other than the identified colors

(8)    Color photographs and color advertisements showing competitive goods in applicant's industry

*See* 37 C.F.R. §2.61(b); TMEP §§814, 1402.01(e).

Failure to comply with a request for information is grounds for refusing registration. *In re Harley*, 119 USPQ2d 1755, 1757-58 (TTAB 2016); TMEP §814.

## 3.  Requirement for a Clarified Color Claim

Applicant must provide an amended color claim clarifying the specific colors claimed as a feature of the mark. *See* 37 C.F.R. §2.52(b)(1); TMEP §§807.07(a) *et seq.* Applicant is advised that generic color names must be used to describe the colors in the mark, e.g., magenta, yellow, turquoise. TMEP §807.07(a)(i)-(ii).

The following color claim is suggested:

**The colors blue and pink are claimed as a feature of the mark.**

**4.** **Requirement for a More Accurate Mark Description**

Applicant must also submit a clear and concise description of the mark that does the following:

(1)   Indicates that the mark is a color of the goods or their packaging or of a specific design feature of the goods or packaging.

(2)   Specifies all the elements in the drawing that constitute the mark and are claimed as part of the mark.

(3)   Specifies any elements that are not part of the mark and indicates that the matter shown in broken or dotted lines is not part of the mark and serves only to show the position or placement of the mark.

*See* 37 C.F.R. §§2.37, 2.52(b)(2), (b)(4); *In re Famous Foods, Inc.*, 217 USPQ 177, 177 (TTAB 1983); TMEP §§807.08, 807.10, 1202.02(c)(ii).

For example, the following mark description is suggested:

**The mark consists of the colors blue and pink as applied to make-up primer shifting iridescently from blue to pink; the dotted lines are not claimed as a feature of the mark but serve only to show placement of the mark on the goods.**

**RESPONSE GUIDELINES**

For this application to proceed, applicant must explicitly address each refusal and/or requirement in this Office action.  For a refusal, applicant may provide written arguments and evidence against the refusal, and may have other response options if specified above.  For a requirement, applicant should set forth the changes or statements.  Please see "Responding to Office Actions" and the informational video "Response to Office Action" for more information and tips on responding.

If applicant does not respond to this Office action within six months of the issue/mailing date, or responds by expressly abandoning the application, the application process will end and the trademark will fail to register.  *See* 15 U.S.C. §1062(b); 37 C.F.R. §§2.65(a), 2.68(a); TMEP §§718.01, 718.02.  Additionally, the USPTO will not refund the application filing fee, which is a required processing fee.  *See* 37 C.F.R. §§2.6(a)(1)(i)-(iv), 2.209(a); TMEP §405.04.

When an application has abandoned for failure to respond to an Office action, an applicant may timely file a petition to revive the application, which, if granted, would allow the application to return to active status.  *See* 37 C.F.R. §2.66; TMEP §1714.  The petition must be filed within two months of the date of issuance of the notice of abandonment and may be filed online via the Trademark Electronic Application System (TEAS) with a $100 fee.  *See* 37 C.F.R. §§2.6(a)(15)(ii), 2.66(a)(1), (b)(1).

**How to respond.  Click to file a response to this nonfinal Office action.**

/Susan K. Lawrence/
Trademark Examining Attorney
Law Office 116, USPTO
(571) 272-9186
sue.lawrence@uspto.gov
(informal communication only)

**RESPONSE GUIDANCE**

- **Missing the response deadline to this letter will cause the application to abandon.**  A response or notice of appeal must be received by the USPTO before midnight **Eastern Time** of the last day of the response period.  TEAS and ESTTA maintenance or unforeseen circumstances could affect an applicant's ability to timely respond.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.**  If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant.  If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.





**Almay Primer 5-in-1**

*The first step to perfected skin.*

The microspheres blend to refine, correct, perfect, hydrate and mattify skin. Lavender microspheres help even out skin tone while the green microspheres help reduce appearance of redness.

- Instantly smooths and helps to color correct skin
- Blurs imperfections
- Lightweight formula
- May be used alone or underneath foundation to improve application and wear
- Hypoallergenic. Oil Free.

Almay makeup looks great, feels great, and loves your skin—for real.

We are also making strides toward a sustainable future by developing products packaged using sustainable materials. Our products are cruelty free, fragrance free, and doctor tested.

We're committed to doing right by you. Because we believe in creating makeup that, first and foremost, is based on the principle of doing no harm—not to your skin, sensitive eyes, nor the planet.

This is Almay.

**How To Use**

**Step 1 :** Pump out a pea size amount of primer.

**Step 2 :** Smooth onto face using fingertips and blend outwards.

**Step 3 :** Allow primer to dry completely and then apply foundation. Try our Almay Truly Lasting Color Makeup for a naturally radiant look or our Almay Skin Perfecting Comfort Matte Foundation for lightweight buildable matte coverage.

11:45:14 AM 3/16/2021

























HOME   ACCESSORIES   ALCOHOL   BEAUTY   FASHION   FOOD   GIVEAWAYS   TECHNOLOGY   TRAVEL   ABOUT   CONTACT

**Hard Candy Cosmetics Launches Limited Edition Color Correct Collection**

April 25, 2017  /  0 Comments  /  in Beauty, Product Reviews  /  by Glasgow Skinner

As a society, we spend an obscene amount of money to hide or camouflage our flaws. The beauty industry alone has thousands of products to help you cover up your outer imperfections, a daily routine we all participate in, whether it is to neutralize redness, transform uneven skin tone to a flawless facial canvas, cover up dark circles and spots, or take our skin from dull to luminous. Many wouldn't dare go "sans fards" in this extremely critical society; the truth is we would all rather go broke than bare faced. Luckily, you don't have to go

guestlistblog
Women's Lifestyle Editor #Foodie, #productreviews #beautyreviews #fashion, #foodie, #gadgets #tech-obsessed #lifestyleblog #mylifeonandofftheguestlist

See More...

Follow @guestlistblog on Instagram

12:16:16 PM 3/16/2021

up dark circles and spots, or take our skin from dull to luminous. Many wouldn't dare go "sans fards" in this extremely critical society; the truth is we would all rather go broke than bare faced. Luckily, you don't have to go broke to get the flawless look we all so desire. Hard Candy Cosmetics launched an affordable **Limited Edition Color Correct Collection**, exclusively at Walmart.





The Hard Candy Cosmetics Color Correct Collection consists of six products, the *Color Correct Expert Créme Wand, Color Correct Radiant Primer, Color Correct Expert Stick, Color Correct Custom Blend Expert Palette, Color Correct Baked Finishing Powder, and the Color Correct Baked Powder.* The collection comes in six color-correcting colors that target specific skin issues:

- **Green**: neutralize skin redness due to sunburn, rosacea, uneven skin tone, or acne
- **Yellow**: neutralize mild skin redness due to mild sunburn or acne
- **Pink**: neutralize dullness and sallowness (Fair to Light skin tones)
- **Lavender**: neutralize dullness and sallowness (Medium to Dark skin tones)
- **Peach**: neutralize dark circles and spots (Fair to Light skin tones)
- **Orange**: neutralize dark circles and spots (Medium to Dark skin tones)

12:17:33 PM 3/16/2021



| | |
|---|---|
| **To:** | Sahi Cosmetics L.L.C. (jmbraun@brauniplaw.com) |
| **Subject:** | U.S. Trademark Application Serial No. 90170750 - SCTM0001 |
| **Sent:** | March 16, 2021 04:23:45 PM |
| **Sent As:** | ecom116@uspto.gov |
| **Attachments:** | |

### United States Patent and Trademark Office (USPTO)

## USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on **March 16, 2021** for
### U.S. Trademark Application Serial No. 90170750

Your trademark application has been reviewed by a trademark examining attorney.  As part of that review, the assigned attorney has issued an official letter that you must respond to by the specified deadline or your application will be abandoned.  Please follow the steps below.

**(1)  Read the official letter.**

**(2)  Direct questions** about the contents of the Office action to the assigned attorney below.


/Susan K. Lawrence/
Trademark Examining Attorney
Law Office 116, USPTO
(571) 272-9186
sue.lawrence@uspto.gov
(informal communication only)

Direct questions about navigating USPTO electronic forms, the USPTO website, the application process, the status of your application, and/or whether there are outstanding deadlines or documents related to your file to the Trademark Assistance Center (TAC).

**(3)  Respond within 6 months** (or earlier, if required in the Office action) from **March 16, 2021**, using the Trademark Electronic Application System (TEAS).  The response must be received by the USPTO before midnight **Eastern Time** of the last day of the response period.  See the Office action for more information about how to respond


## GENERAL GUIDANCE
· **Check the status** of your application periodically in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

· **Update your correspondence email address**, if needed, to ensure you receive important USPTO notices about your application.

· **Beware of misleading notices sent by private companies about your application.**  Private companies not associated with the USPTO use public information available in trademark registrations to mail and email trademark-related offers and notices – most of which require fees.  All **official USPTO correspondence** will only be **emailed from the domain "@uspto.gov."**